UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLAIRE DEPASQUALE and CHRISTOPHER MUELLER, | * <br> * <br> * |
| Plaintiffs, | * <br> * |
| v. | * <br> * |
| ORANGE PEEL BAKERY, LLC and JULIANNE G. VANDERHOOP, | * <br> * <br> * |
| Defendants, | * <br> * |

Civil Action No. 24-cv-10231-ADB

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Plaintiffs Claire Depasquale and Christopher Mueller ("Plaintiffs") bring this action against their former employers, Orange Peel Bakery, LCC ("the Bakery") and its owner Julianne G. Vanderhoop ("Vanderhoop" and, collectively with the Bakery, "Defendants"), alleging claims for non-payment of wages in violation of state and federal laws.  [ECF No. 1 ("Compl.")]. Currently before the Court are Defendants' motion for summary judgment as to all claims, [ECF No. 36], and Plaintiffs' motion for partial summary judgment, [ECF No. 54].  For the reasons set forth below, Defendants' motion is **<u>DENIED</u>** and Plaintiffs' motion is **<u>GRANTED</u>** as to liability on Counts I and II but otherwise **<u>DENIED</u>**.

I.      **BACKGROUND**

A.      **Local Rule 56.1**

Local Rule 56.1 provides that "[m]otions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other

documentation" and provides that "[f]ailure to include such a statement constitutes grounds for denial of the motion." L.R. 56.1. It further requires that "[a] party opposing [a] motion [for summary judgment] shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Id. "Local Rule 56.1 was adopted to expedite the process of determining which facts are genuinely in dispute, so that the court may turn quickly to the usually more difficult task of determining whether the disputed issues are material." Brown v. Armstrong, 957 F. Supp. 1293, 1297 (D. Mass. 1997), aff'd, 129 F.3d 1252 (1st Cir. 1997).

"Where a party opposing a motion for summary judgment fails to comply with Local Rule 56.1, the court has the discretion to decide whether to impose the sanction of deeming the moving party's factual assertions to be admitted." Butters v. Wells Fargo Advisors, LLC, No. 10-cv-10072, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012) (citing Swallow v. Fetzer Vineyards, 46 F. App'x 636, 638–39 (1st Cir. 2002)); see also Summers v. City of Fitchburg, 940 F.3d 133, 138 (1st Cir. 2019) ("Here, the [non-moving party] flouted Local Rule 56.1 and allowed the [the moving party] to map the boundaries of the summary judgment record. Such actions have consequences, and the district court deemed the [moving party's] statement of undisputed material facts admitted. Given the clarity of Local Rule 56.1 and the important function that it serves, the district court was fully justified in limiting the summary judgment record to the four corners of the [moving party's] statement of undisputed material facts." (first citing United States v. McNicol, 829 F.3d 77, 80–81 (1st Cir. 2016); then citing Schiffmann v. United States, 811 F.3d 519, 524–25 (1st Cir. 2016))).

Here, Defendants' submissions fail to comply with Local Rule 56.1, both in reference to their motion for summary judgment and in opposition to Plaintiffs' motion. In support of their

motion for summary judgment, Defendants filed a statement of "Undisputed Material Facts," [ECF No. 37 at 2]; that statement, however, does not cite to any record evidence, nor does Defendants' legal brief otherwise point the Court to the portions of the record that would support those facts, see generally [id.], and Plaintiffs, in fact, dispute almost all of these facts, with appropriate record citations, [ECF No. 57 at 1–2]. Moreover, Defendants failed to respond to Plaintiffs' Statement of Undisputed Facts, [ECF No. 57 at 3–5], as contemplated by Local Rule 56.1.

Despite Defendants' failure to comply with Local Rule 56.1, the Court, in its discretion, will not deny Defendants' motion for summary judgment solely on that basis, nor will it necessarily deem all Plaintiffs' undisputed facts as admitted. Rather, it will consider the entire record and identify any relevant disputes of material fact regarding Plaintiffs' Statement of Undisputed Facts, despite defense counsel's failure to do so, and also consider whether the record supports Defendants' motion for summary judgment, again despite defense counsel's shortcomings.

**B.    Factual Background[1]**

The Bakery, located on Martha's Vineyard, was at all times relevant to this dispute owned and operated by Vanderhoop. [SOF ¶¶ 9–11]. In or around May 20, 2023, Defendants hired Plaintiffs to work at the Bakery until in or around September 23, 2023, when the Bakery's busy season ended. [Id. ¶ 13]. At the outset of their employment, pursuant to an "informal employment contract," [id. ¶ 1], the Bakery agreed to pay Plaintiffs a gross salary of approximately $1,200 per week, [id. ¶ 14], although, as discussed infra, the exact amount is in

---

[1] The Court draws the facts, unless otherwise stated, from the parties' combined Rule 56.1 statements of material facts, which is Plaintiff's Response to Defendants' Statement of Material Facts and Plaintiffs' Statement of Undisputed Material Facts, [ECF No. 57 ("SOF")], as well as documents referenced therein and, where necessary, the record.

dispute. Plaintiffs regularly worked six days a week, [id. ¶ 15], and their shifts typically lasted at least eight hours, [id.]; see also [ECF No. 55-1 ("Vanderhoop Dep.") at 16:10–15 (describing shift as approximately eight hours)], although, again, the exact number of hours worked each week is in dispute, see infra. Their job duties included baking and assisting customers with purchasing baked items. [SOF ¶ 16]. They were also responsible for assisting on nights where the Bakery made and sold pizza, [id.], although, once again, their exact role in those pizza nights is disputed, see infra.

Throughout Plaintiffs' employment, Defendants paid Plaintiffs by direct deposit out of an account at Martha's Vineyard Bank, and never by cash or another means. [SOF ¶¶ 19–20]. That said, Defendants failed to pay Plaintiffs wages for multiple weeks of their employment and failed to timely pay some wages that were eventually paid. [Id. ¶¶ 21–22]. Defendants also never compensated Plaintiffs with wages at a rate of one and one-half times their regular pay rate for overtime hours, meaning hours worked in excess of 40 hours in a week. [Id. ¶ 18]. Further, Defendants never remitted tips to Plaintiffs that were received through Venmo, despite customers leaving cash tips via Venmo. [Id. ¶¶ 24–25].

### C.    Procedural History

Plaintiffs filed their Complaint on January 29, 2024, [Compl.], raising claims for non-payment of overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., [id. ¶¶ 25–35 (Count I)]; non-payment of earned wages in violation of the Massachusetts Wage Act (the "Wage Act"), Mass. Gen. Laws ch. 149, §§ 148, 150, [id. ¶¶ 36–40 (Count II)]; failure to issue lawful paystubs in violation of Massachusetts law, [id. ¶¶ 41–47 (Count III)]; failure to remit tips in violation of the Massachusetts Tips Act (the "Tips Act"), [id. ¶¶ 48–50 (Count IV)]; breach of contract, [id. ¶¶ 51–57 (Count V)]; and unjust enrichment, [id. ¶¶ 58–59 (Count VI)]. Defendants answered the Complaint on March 12, 2024 and brought a

counterclaim, [ECF No. 18], which Plaintiffs moved to dismiss on March 22, 2024, [ECF No. 20]. The Court dismissed the counterclaim on September 26, 2024, [ECF No. 33].

Defendants filed their motion for summary judgment as to all counts on October 28, 2024, [ECF No. 36], and Plaintiffs filed their motion for partial summary judgment as to Counts I, II, and IV on October 30, 2025, [ECF No. 54], as well as their response to Defendants' statement of facts, [SOF].[2] Defendants opposed Plaintiffs' motion on November 19, 2024, [ECF No. 56], and Plaintiffs filed a further reply in support of their motion on December 18, 2024, [ECF No. 63].

The Court held a hearing on the pending motions on July 24, 2025. At the hearing, Plaintiffs clarified that they were only seeking summary judgment as to liability. Further, the Court explained to the parties that it would not be granting summary judgment in full as to any count and, at the request of the parties, set a trial date. [ECF No. 69].

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is considered "genuine" when "the evidence of record permits a rational factfinder to resolve it in favor of either party." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A fact is considered "material" when "its existence or nonexistence

---

[2] Plaintiffs experienced technical problems in filing their motion for partial summary judgment and moved for an extension of their filing deadline, [ECF Nos. 60, 61], which this Court granted, [ECF No. 65]. To the extent Defendants argue that this late filing is grounds for denying Plaintiffs' motion, [ECF No. 56 at 1], the Court disagrees given that it found good cause for the extension.

has the potential to change the outcome of the suit." Id. at 5 (citing Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must direct [the Court] to specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor." Borges, 605 F.3d at 5.

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment." Podiatrist Ass'n, Inc. v. La Cruz Azul De P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990)). Where inferences are to be drawn from the stated facts, those inferences "must be viewed in the light most favorable to the party opposing the motion." Oleskey ex rel. Boumediene v. U.S. Dept. of Defense, 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)). The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (internal quotation and citation omitted).

When a court faces cross motions for summary judgment, it applies the above analysis, unaltered, "to each motion in turn." Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003) (citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)); see also Cochran, 328 F.3d at 6 ("This framework is not altered by the presence of cross-motions for summary judgment.").

## III.    DISCUSSION

### A.    Count I: Non-Payment of Overtime Wages under the FLSA

Both parties move for summary judgment as to Count I, although only Plaintiffs provide a cogent argument as to the lack of a genuine dispute of material fact entitling them to judgment as a matter of law.  [ECF No. 55 at 6–9]; see generally [ECF No. 37].  Specifically, Plaintiffs contend that there is no genuine dispute that Defendants violated § 207(a)(1) of the FLSA because Defendants failed to pay the required overtime premium when Plaintiffs were consistently working up to 60 hours per week.  [ECF No. 55 at 6–9].  Rather, Plaintiffs aver that they were paid a set weekly amount for the work, which was untethered to the actual amount of overtime hours worked and therefore did not include the overtime premium required by the FLSA.  [Id. at 4, 6].

Section 207(a)(1) of the FLSA "requires employers to compensate employees for each hour worked in excess of forty hours during a workweek 'at a rate not less than one and one-half times the regular rate at which [they are] employed.'" Lalli v. Gen. Nutrition Ctrs., Inc., 814 F.3d 1, 2 (1st Cir. 2016) (quoting 29 U.S.C. § 207(a)(1)) (alteration in original).  To succeed on a claim for unpaid overtime wages, Plaintiffs must show that they were "employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'" Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  Plaintiffs

must also show that the "employer knew or should have known that [the employees] were working overtime." Crowe v. Examworks, Inc., 136 F. Supp. 3d 16, 43 (D. Mass. 2015) (citing Manning, 725 F.3d at 43).

Although not entirely clear, Defendants appear to contend that Plaintiffs are not entitled to summary judgment, and that Defendants in fact are entitled to it, because 1) Plaintiffs were paid a salary, exempting them from the FLSA's overtime requirements, and 2) Defendants did not track Plaintiffs' hours, and thus Plaintiffs cannot demonstrate that they are entitled to overtime as a matter of law. [ECF No. 37 at 8–9]. Defendants' first argument is easily dispatched. Although Defendants are correct that the overtime requirements of the FLSA are subject to certain exceptions, none of these exceptions are solely based on an employee being paid a salary, see 29 U.S.C. § 213(a)(1)–(19), and Defendants fail to provide any other facts or cogent argument to support the applicability of any such exemption, [ECF No. 37].

Defendants' contention that Plaintiffs are not entitled to summary judgment because Defendants did not have a system for tracking Plaintiffs' hours, while more involved, is equally unavailing. In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the Supreme Court articulated a two-part standard for allowing employees to recover approximate damages arising from unpaid wages "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes." Id. at 687. Under Anderson, the "employee must prove 1) that he 'performed work for which he was improperly compensated,' and 2) produce 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" St. Pierre v. CVS Pharm., Inc., 265 F. Supp. 3d 131, 140 (D. Mass. 2017) (quoting Anderson, 328 U.S. at 687). An employer must then "rebut with precise data, or otherwise negate the reasonableness of the inference" or a court can award damages, "even

8

though the result be only approximate." Id. (quoting Anderson, 328 U.S. at 688); see also Donis, v. American Waste Servs., LLC, 125 N.E.3d 759, 770 (Mass. App. Ct. 2019) ("The [Anderson] framework is designed to benefit employees, not employers—that is, to ensure that employees are not 'penalize[d]' for their inability 'to prove the precise extent of uncompensated work' because of the 'employer's failure to keep proper records.'" (second alteration in original)), aff'd in part, rev'd in part, 149 N.E.3d 361 (2020). Courts have further explained that "[t]he employee's initial burden of proof is 'minimal,' though 'not nonexistent'" and "[t]he employee can satisfy the burden through 'estimates based on his own recollection.'" Pineda v. Skinner Servs., No. 16-cv-12217, 2020 WL 5775160, at *16 (D. Mass. Sep. 28, 2020) (citation omitted). "Courts have routinely found that plaintiffs' testimony estimating their daily or weekly uncompensated hours and explaining the basis for their estimates is sufficient to meet their initial burden of proof, especially at the summary judgment stage." Id.

The factual record reflects that Plaintiffs worked for at least eight hours a day, six days a week, which averages out to at least 48 hours per week, and would entitle Plaintiffs to an overtime premium for some number of hours. [SOF ¶ 15 (outlining work schedule as six days on, one day off, with each shift spanning at least eight hours)]; [Vanderhoop Dep. 15:8–16:15 (discussing typical employee shift, which was approximately eight hours)]; [ECF No. 55-2 ¶ 6 (Defendants admitting in interrogatory responses that Plaintiffs' number of hours worked is "unknown" and that "[s]alaried workers worked when they believed their services were needed.")]. There is also no genuine dispute that Defendants paid Plaintiffs a set weekly amount, which never compensated Plaintiffs with wages at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 in a week. [SOF ¶ 18]; [ECF No. 55-2 ¶ 7 (Defendants admitting in interrogatory response that Plaintiffs "were paid for 40 hours per

week")].  As such, Plaintiffs' motion for summary judgment is **GRANTED** as to liability on Count I.

That said, the Court would be remiss if it did not note that the record is far from clear as to how much overtime Plaintiffs actually accrued during their tenures at the Bakery.  Plaintiffs' affidavits both claim that they worked the following hours: Wednesday from 9:00am to 5:00pm or 6:00pm, Thursday and Friday from 9:00am to 10:00pm, Saturday from 9:00am to 7:00pm, and Sunday and Monday from 9:00am to 5:00pm.  [ECF No. 55-3 ¶ 5]; [ECF No. 55-4 ¶ 5].  As noted, Defendants have failed to directly dispute this material fact, and they do not point to evidence to dispute it in their briefing.  This Court's review of the record, however, reveals that Vanderhoop's deposition testimony and an affidavit from another employee, Sophia Macaisa, provide reason to doubt the rigidity of this schedule.  Both Vanderhoop and Macaisa provide sworn testimony that although a typical workday may have spanned more than eight hours, that was a function of the fact that the job included a significant break in the middle of the day to allow baked goods to cool and to avoid the heat of the day, given that the staff worked with an outdoor oven.  Specifically, Vanderhoop testified that the Bakery's working hours were "flexible because . . . people [were] needed during the morning and the evening," that the Bakery's "motto is bake, beach, repeat because [employees] take off during the midday," and that a typical day would involve baking in the morning, taking a break, and coming back when "it cools down." [Vanderhoop Dep. 15:8–16:15].  Macaisa's affidavit describes a similar schedule, claiming that Mueller and Depasquale "worked in the mornings" and "would break in the afternoon between 10 AM and maybe 3 PM."  [ECF No. 47 at ¶ 7].  Because the number of overtime hours worked is subject to a genuine dispute of material fact, the Court cannot ascertain damages on this record, and it reserves this issue for trial.

**B.    Count II: Non-Payment of Earned Wages in Violation of the Massachusetts Wage Act**

Both parties move for summary judgment as to Count II, which asserts that Defendants failed to timely pay earned wages in violation of the Massachusetts Wage Act.  [ECF No. 37 at 8–9, 15]; [ECF No. 55 at 9–12].  The Wage Act "provides a cause of action for loss of wages and other benefits."  McAleer v. Prudential Ins. Co. of America, 928 F. Supp. 2d 280, 287 (D. Mass. 2013).  To prevail on a Wage Act claim, Plaintiffs must prove that (1) they were employees under the statute, (2) their compensation constituted a wage under the statute, and (3) Defendants violated the Wage Act by not paying them their wages in a timely manner.  Stanton v. Lighthouse Fin. Servs., Inc., 621 F. Supp. 2d 5, 10 (D. Mass. 2009).

The Wage Act states that employees claiming to be aggrieved by a violation of section 148 of the Act are entitled to "damages incurred, and for any lost wages and other benefits."  Mass. Gen. Laws ch. 149, § 150.  Though the Wage Act "'impose[s] strict liability on employers,' who must 'suffer the consequences' of non-compliance regardless of their intent," Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018) (quoting Dixon v. City of Malden, 984 N.E.2d 261, 265 (Mass. 2013)), Plaintiff must still prove damages to be entitled to recovery, Hogan v. InStore Grp., LLC, 512 F. Supp. 3d 157, 174 (D. Mass. 2021); cf. Awuah v. Coverall N. Am., Inc., 740 F. Supp. 2d 240, 241, 243 (D. Mass. 2010) (stating that plaintiff, who was misclassified as an independent contractor under the Wage Act, was only entitled to "damages incurred" directly from the misclassification); Somers v. Converged Access, Inc., 911 N.E.2d 739, 751 (Mass. 2009) (stating that "'damages incurred' will include any wages and benefits the plaintiff proves he was denied because of his misclassification as an independent contractor").

Despite moving for summary judgment as to all counts, Defendants effectively concede that Plaintiffs are entitled to judgement on Count II, as Defendants' own statement of undisputed material facts states that "payments [to Plaintiffs] were delayed" and that "Defendant(s) acknowledge they may owe each Plaintiff a sum for missed direct deposit of their salary." [ECF No. 37 at 2, ¶¶ 3, 8 at 2]. Vanderhoop further admitted at her deposition, which took place on July 25, 2024, that she still had not paid Plaintiffs in full for their work during the summer of 2023. [Vanderhoop Dep. at 24:24–25:3 ("Q: Have you paid the Plaintiffs all of their wages from last summer? A: No, I have not.")]; [id. at 25:4–12 (Vanderhoop explaining that she owes each Plaintiff for two weeks of work, which remain unpaid)]. On this record, the Court is satisfied that Defendants[3] are liable under the Wage Act, and Plaintiffs' motion for summary judgment on Count II is **<u>GRANTED</u>** as to liability.

That said, much like the FLSA claim, the underlying record as to the extent of Plaintiffs' damages is far from clear. Most glaringly, this Court's review of the record indicates that it contains contradictory evidence regarding each Plaintiffs' agreed-upon wages, with Mueller's being particularly uncertain.[4] Plaintiffs' undisputed SOF asserts that both Depasquale and Mueller were paid $1,200 per week, citing to affidavits from each Plaintiff and Defendants' responses to Plaintiffs' interrogatories. [SOF ¶ 14 (citing ECF Nos. 55-2, 55-3 (Depasquale Aff.), 55-4 (Mueller Aff.)]. On closer examination, however, the interrogatory responses cited in

---

[3] Although Defendants do not specifically contest Vanderhoop's liability, it is worth noting that the Wage Act holds officers or agents of a company liable provided that the officer "controls, directs, and participates to a substantial degree in formulating and determining policy" of the company liable for failure to pay wages. Cook v. Patient Edu, LLC, 989 N.E.2d 847, 851 (Mass. 2013). Defendants do not dispute that Vanderhoop not only owned the Bakery but also controlled its finances, employment policies, and day-to-day operations, which is sufficient for liability. [SOF ¶¶ 10–11].

[4] The record is similarly unclear as to how many weeks remain unpaid, how many late payments were made, and how late those payments were.

support contradict Mueller's statement in his affidavit that he was paid $1,200 per week, as Defendants' responses claim Mueller was paid $3,000 gross biweekly, or $1,500 per week [ECF No. 55-2 ¶ 9].[5]  Mueller's own interrogatory responses further complicate the matter, as he claims in back-to-back responses that the agreement was to be paid $2,400 every two weeks but that he was paid only $2,200 every two weeks.  [ECF No. 55-5 ¶¶ 3, 4].  Vanderhoop testified at her deposition that Mueller was paid $1,800 biweekly, [Vanderhoop Dep. at 18:19–19:1; 20:15–21:6], but an email from her bookkeeper states that Mueller was to be paid $1,200 for the first two weeks, increasing to $1,500 in week three, [ECF No. 46 at 3].  Depasquale's wages are a bit more straightforward as the weight of evidence seems to indicate she was paid $1,200 per week, see [ECF No. 55-2 ¶ 9; ECF No. 46 at 3; ECF No. 45-1]; that said, Vanderhoop testified that Depasquale was paid $1,500 biweekly, [Vanderhoop Dep. at 18:19–19:1; 20:15–21:6], and, like Mueller, Depasquale's interrogatory responses indicate that she was paid $2,200 biweekly, [ECF No. 55-6 ¶ 4].  Once again, because it cannot ascertain a measure of damages for the unpaid work, the Court reserves the issue of damages for trial.

    **C.**    **Count III: Paystubs**

    Defendants move for summary judgment as to Count III, but their briefing does not points to any facts or provide any legal authority to explain why they are entitled to judgment as a matter of law, and the Court's independent review of the record reveals no reason to believe that Defendants are entitled to summary judgment as to Count III.[6]  As such, Defendants' motion for summary judgment is **<u>DENIED</u>** as to Count III.

---

[5] Plaintiff's interrogatory labels two different questions as question nine, and this citation refers to the first instance.

[6] Defendants do provide what appears to be paystubs for Depasquale.  [ECF No. 45-1].  These paystubs, however, list the Bakery's address for Depasquale, and Defendants provide no other factual support for the idea that these paystubs were provided to her.

**D.      Count IV: Failure to Remit Tips in Violation of the Massachusetts Tips Act**

Both parties move for summary judgment as to Count IV, which alleges that Defendants failed to remit tips to Plaintiffs in violation of the Massachusetts Tips Act. [ECF No. 37 at 9–11, 15]; [ECF No. 55 at 12–13]. Plaintiffs contend that "there is no dispute that Plaintiffs prepared and served food directly to customers at the Bakery and had no managerial responsibilities," that "it is undisputed that the Bakery collected tips through Venmo," and that the Bakery "failed to remit those tips to Plaintiffs," which violated the Tips Act. [ECF No. 55 at 13]. Once again, Defendants' argument in support of their motion for summary judgment is far from a model of clarity, but their primary argument appears to be that Plaintiffs are not covered by the Tips Act because they are not "wait staff." [ECF No. 37 at 9–11]. They contend that Plaintiffs "had very little contact or interaction with the customers, the only exception may be those days designated as Pizza Day or Pizza Night," during which "[c]ustomers would order their pizzas; it would be boxed when ready; [and] customers would take them home . . . [or] would eat at" tables the Bakery provided. [Id. at 10–11].

The Massachusetts Tips Act prohibits employers from retaining "any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron[,]" as well as "any tip or service charge given directly to the employer." Mass. Gen. Laws ch. 149, § 152A(b). Under the statute, a

> [w]ait staff employee" includes "a person, including a waiter, waitress, bus person, person in a quick service restaurant who prepares or serves food or beverages as part of a team of counter staff or any other counter employee who: (i) serves beverages or prepared food directly to patrons or who clears patrons' tables; (ii) works in a restaurant, banquet facility or other place where prepared food or beverages are served; and (iii) has no managerial responsibility during a day in which the person serves beverages or prepared food or clears patrons' tables.

Id. § 152A(a). The purpose of the statute is to protect the wages and tips of the employees who fall within the scope of its protection. DiFiore v. Am. Airlines, Inc., 910 N.E.2d 889, 893

(Mass. 2009) ("The Legislature's intent in enacting the Act can be plainly discerned from its language and history—to ensure that service employees receive the tips, gratuities, and service charges that customers intend them to receive.").

Plaintiffs are correct that it is undisputed that Defendants collected tips via Venmo and that these tips were never remitted to them. [Vanderhoop Dep. 22:1–24 (testifying that the Bakery collected tips via Venmo and retained them)]. They are incorrect, however, that there is no dispute as to whether Plaintiffs served customers such that they qualify as wait staff under the Tips Act. Although the Court acknowledges that Vanderhoop testified that Plaintiffs at some point took orders for pizza and served pizza to customers, [Vanderhoop Dep. 13:5–10], and Plaintiffs submitted affidavits to that effect, [ECF Nos. 55-3 ¶ 3; 55-4 ¶ 3], Macaisa's affidavit indicates that Plaintiffs were not involved in serving pizza to customers, [ECF No. 47 at 5]. Specifically, Macaisa swears under penalty of perjury that "[o]n Pizza Night, [Mueller] was in charge of the stone oven," that Depasquale "was always inside doing the baked goods that were not part of Pizza Night," and that Macaisa was the one "taking orders." [Id.]. She further adds that, on one pizza night, Depasquale and her argued because Depasquale "wanted to take orders so that she could get some of the tips left by the patrons." [Id. at 5–6]. While thin, this sworn testimony raises a genuine issue of material fact as to whether Plaintiffs qualify as "wait staff" under the Tips Act, which the Court cannot resolve without impermissibly delving into each witness's credibility. As such, Plaintiffs' motion for summary judgment is **DENIED** as to Count IV.

### E.    Count V and VI: Breach of Contract and Unjust Enrichment

Defendants move for summary judgment as to Counts V and VI, but their briefing neither points to any facts nor provides any legal authority to explain why they are entitled to judgment as a matter of law, and the Court's independent review of the record reveals no reason to believe

that Defendants are entitled to summary judgment as to these counts.  As such, Defendants'

motion is **<u>DENIED</u>** as to Counts V and VI.

## IV.    CONCLUSION

Accordingly, Plaintiffs' motion for summary judgment is **<u>GRANTED</u>** as to liability on

Counts I and II, although the issue of damages is reserved for trial.  Plaintiffs' motion is

**<u>DENIED</u>** as to Count IV.  Defendants' motion for summary judgment is **<u>DENIED</u>** as to all

counts.


**SO ORDERED.**

July 31, 2025                                                <u>/s/ Allison D. Burroughs</u>
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE